UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

FILED
OCT 19 2021
U.S. DISTRICT COURT
ELKINS WV 26241

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal No. 3:21-cr-49 |
| JONATHAN TOEBBE and<br>DIANA TOEBBE, | Violations: 42 U.S.C. § 2274(a)<br>18 U.S.C. § 2(a)<br>(Counts 1, 2, and 3) |
| Defendants. | |

## INDICTMENT

The Grand Jury charges that:

### Introduction

At all times relevant to this Indictment:

### Parties and Entities

1. Defendant **JONATHAN TOEBBE** was employed by the Department of the Navy as a nuclear engineer and was assigned to the Reactor Engineering Division of the Naval Nuclear Propulsion Program, also known as Naval Reactors.

2. Defendant **JONATHAN TOEBBE** was married to Defendant **DIANA TOEBBE**.

3. The mission of Naval Reactors was to provide militarily effective nuclear propulsion plants and to ensure their safe, reliable, and long-lived operation. Naval Reactors was responsible for all aspects of the U.S. Navy's nuclear propulsion, including research, design,

construction, testing, operation, maintenance, and ultimate disposition of naval nuclear propulsion plants, including Virginia-class submarines.

4. Virginia-class submarines are nuclear-powered warships, which incorporate the latest in stealth, intelligence gathering, and weapons systems technology.

5. Virginia-class submarines, with a per unit cost of approximately $3 billion, are currently in service with the United States Navy and are expected to remain in service until at least 2060.

6. Defendant **JONATHAN TOEBBE** held an active TOP SECRET security clearance through the United States Department of Defense and an active Q clearance through the United States Department of Energy, which granted him to access to information involving or incorporating "Restricted Data" within the meaning of the Atomic Energy Act of 1954, 42 U.S.C. § 2011 et seq.

7. Defendant **JONATHAN TOEBBE** worked with and had access to information concerning the Virginia-class submarine, including but not limited to, information relating to militarily sensitive design elements, operating parameters, and performance characteristics of Virginia-class submarine reactors, which constitutes information involving or incorporating Restricted Data within the meaning of the Atomic Energy Act.

## The Atomic Energy Act

8. The Atomic Energy Act prohibits communicating, transmitting, or disclosing information involving or incorporating Restricted Data to any individual or person, or attempting or conspiring to do so, with the intent to injure the United States or to secure an advantage to any foreign nation. 42 U.S.C. § 2274(a).

9. Pursuant to the Atomic Energy Act, "Restricted Data" consists of "all data concerning (1) design, manufacture, or utilization of atomic weapons; (2) the production of special nuclear material; or (3) the use of special nuclear material in the production of energy," but does not include data that has been declassified or removed from the Restricted Data category. 42 U.S.C. § 2014(y).

## COUNT ONE

(Conspiracy to Communicate Restricted Data)

10. From an unknown date but no later than on or about April 1, 2020, through on or about October 9, 2021, in Jefferson County, West Virginia, within the Northern District of West Virginia, and elsewhere, the defendants, **JONATHAN TOEBBE** and **DIANA TOEBBE**, lawfully and unlawfully having possession of, access to, control over, and being entrusted with a document, writing, sketch, plan, note, and information involving and incorporating Restricted Data within the meaning of the Atomic Energy Act, specifically 42 U.S.C. § 2014(y), did combine, conspire, confederate, agree and have a tacit understanding with each other to communicate, transmit, and disclose the same to another person with the intent to injure the United States and to secure an advantage to a foreign nation.

## OBJECT OF CONSPIRACY

11. It was a purpose and object of the conspiracy for the defendants to enrich themselves by demanding and accepting payment in return for communicating, transmitting, or disclosing to a foreign nation information involving or incorporating Restricted Data.

## MANNER AND MEANS

It was part of the conspiracy that:

12. Over a period of years, defendant **JONATHAN TOEBBE** unlawfully and surreptitiously removed from his United States Navy workplace information involving or incorporating Restricted Data.

13. Defendant **JONATHAN TOEBBE** sent a package to a foreign government, hereinafter COUNTRY1, containing a sample of Restricted Data and instructions for establishing a covert relationship to purchase additional Restricted Data.

14. Defendant **JONATHAN TOEBBE** communicated with an individual he believed to a representative of COUNTRY1 on an end-to-end encrypted email service to develop a plan to exchange Restricted Data for monetary payment.

15. Defendant **JONATHAN TOEBBE** covertly disclosed Restricted Data to an individual he believed to be a representative of COUNTRY1 in return for monetary payment made via a decentralized cryptocurrency that uses a public distributed ledger with privacy-enhancing technologies that obfuscate transactions to achieve anonymity and fungibility.

16. Defendant **JONATHAN TOEBBE** serviced locations known as "dead drops," which were identified to him by an individual he believed to be a representative of COUNTRY1. A dead drop is a means of covertly passing items from one person to another, in which one individual leaves such items in a prearranged concealed location, and another individual later retrieves the items from that concealed location. Defendant **JONATHAN TOEBBE** serviced the dead drops by placing inside a designated container an encrypted SD card containing Restricted Data and/or a communication.

17. Defendant **DIANA TOEBBE** provided cover and acted as a lookout while Defendant **JONATHAN TOEBBE** serviced the dead drop.

18. Once the defendants received payment of the agreed-upon amount of cryptocurrency, Defendant **JONATHAN TOEBBE** sent an encrypted email, which contained the decryption key for the SD card, to an individual he believed to be a representative of COUNTRY1.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the object thereof, a conspirator committed at least one of the following overt acts, and others, in the Northern District of West Virginia, and elsewhere:

19. On or about April 1, 2020, Defendant **JONATHAN TOEBBE** sent and caused to be sent a package to COUNTRY1, which contained a sample of Restricted Data relating to U.S. Navy nuclear powered warships and instructions for establishing a covert relationship to purchase additional Restricted Data. The instructions stated, in part: "I believe this information will be of great value to your nation. This is not a hoax."

20. On or about February 10, 2021, Defendant **JONATHAN TOEBBE** sent and caused to be sent an encrypted email to an individual he believed to be a representative of COUNTRY1, stating, in part: "Let us discuss how to proceed."

21. On or about March 5, 2021, Defendant **JONATHAN TOEBBE** sent and caused to be sent an encrypted email to an individual he believed to be a representative of COUNTRY1, proposing an electronic exchange of Restricted Data for a payment of $100,000 in cryptocurrency and stating, in part: "[P]lease remember I am risking my life for your benefit and I have taken the first step."

22. On or about April 9, 2021, Defendant **JONATHAN TOEBBE** sent and caused to be sent an encrypted email to an individual he believed to be a representative of COUNTRY1, requesting "some physical signal" to verify the individual's identity as a representative of COUNTRY1.

23. On or about May 29, 2021, Defendant **JONATHAN TOEBBE** traveled to the Washington, D.C. area and viewed the signal that had been placed at a location associated with COUNTRY1.

24. On or about May 31, 2021, Defendant **JONATHAN TOEBBE** sent and caused to be sent an encrypted email to an individual he believed to be a representative of COUNTRY1, requesting details for a physical dead drop of Restricted Data.

25. On or about June 8, 2021, Defendant **JONATHAN TOEBBE** sent and caused to be sent an encrypted email to an individual he believed to be a representative of COUNTRY1 and provided a cryptocurrency payment address for a good faith payment of $10,000 prior to the disclosure of any additional Restricted Data.

26. On or about June 17, 2021, Defendant **JONATHAN TOEBBE** sent and caused to be sent an encrypted email to an individual he believed to be a representative of COUNTRY1, acknowledging receipt of the good faith payment of $10,000 in cryptocurrency and inviting instructions for a physical dead drop of Restricted Data.

27. On or about June 26, 2021, Defendant **JONATHAN TOEBBE** and Defendant **DIANA TOEBBE** traveled from Maryland to Jefferson County, West Virginia.

28. On or about June 26, 2021, in Jefferson County, West Virginia, Defendant **JONATHAN TOEBBE** serviced a dead drop by leaving behind Restricted Data relating to militarily sensitive design elements, operating parameters, and performance characteristics of

Virginia-class submarine reactors on an SD card, which was wrapped in plastic and concealed between two slices of bread on a half of a peanut butter sandwich. The SD card also contained a typed message that included statements, "I hope your experts are very happy with the sample provided," and "I want our relationship to be very successful for us both."

29. On or about June 26, 2021, in Jefferson County, West Virginia, Defendant **DIANA TOEBBE** provided cover and acted as a lookout for Defendant **JONATHAN TOEBBE** while he serviced the dead drop.

30. On or about June 28, 2021, Defendant **JONATHAN TOEBBE** sent and caused to be sent an encrypted email to an individual he believed to be a representative of COUNTRY1 and provided a cryptocurrency payment address for a payment of $20,000 for the Restricted Data he left at the dead drop.

31. On or about June 29, 2021, Defendant **JONATHAN TOEBBE** sent and caused to be sent an encrypted email to an individual he believed to be a representative of COUNTRY1 and provided the decryption key for the SD card left at the dead drop.

32. On or about July 31, 2021, Defendant **JONATHAN TOEBBE** and Defendant **DIANA TOEBBE** traveled from Maryland to south-central Pennsylvania.

33. On or about July 31, 2021, in south-central Pennsylvania, Defendant **JONATHAN TOEBBE** serviced a dead drop by leaving behind a typed message, which proposed a plan for him to provide 51 packages over time in exchange for a total of $5 million paid in cryptocurrency. The message also included statements that the information "was slowly and carefully collected over several years" and "smuggled past security checkpoints a few pages at a time" and that one of the sets of information "reflects decades of U.S. Navy 'lessons learned' that will help keep your sailors safe."

34. On or about July 31, 2021, in south-central Pennsylvania, Defendant **DIANA TOEBBE** provided cover and acted as a lookout for Defendant **JONATHAN TOEBBE** while he serviced the dead drop.

35. On or about August 27, 2021, Defendant **JONATHAN TOEBBE** sent and caused to be sent an encrypted email to an individual he believed to be a representative of COUNTRY1 and provided a cryptocurrency payment address for a payment of $70,000 for the Restricted Data he would leave at a dead drop the next day.

36. On or about August 28, 2021, Defendant **JONATHAN TOEBBE** traveled from Maryland to eastern Virginia.

37. On or about August 28, 2021, in eastern Virginia, Defendant **JONATHAN TOEBBE** serviced a dead drop by leaving behind Restricted Data relating to militarily sensitive design elements, operating parameters, and performance characteristics of Virginia-class submarine nuclear reactors on an SD card, which was concealed in a chewing gum package. The SD card also contained a typed message, stating, in part: "There is only one other person I know is aware of our special relationship, and I trust that person absolutely"; "I was extremely careful to gather the files I possess slowly and naturally in the routine of my job, so nobody would suspect my plan"; "I do not believe any of my former colleagues would suspect me, if there is a future investigation"; and "We have cash and passports set aside for th[e] purpose" of having to flee the United States.

38. On or about August 29, 2021, Defendant **JONATHAN TOEBBE**, after receiving a cryptocurrency payment in the amount of $70,000, sent and caused to be sent an encrypted email

to an individual he believed to be a representative of COUNTRY1 and provided the decryption key for the SD card left at the dead drop.

39. On or about October 9, 2021, Defendant **JONATHAN TOEBBE** and Defendant **DIANA TOEBBE** traveled from Maryland to Jefferson County, West Virginia.

40. On or about October 9, 2021, in Jefferson County, West Virginia, Defendant **JONATHAN TOEBBE** serviced a dead drop by leaving behind an SD card, which was concealed in a chewing gum package.

41. On or about October 9, 2021, in Jefferson County, West Virginia, Defendant **DIANA TOEBBE** provided cover and acted as a lookout for Defendant **JONATHAN TOEBBE** while he serviced the dead drop.

In violation of Title 42, United States Code, Sections 2274(a) and 2014.

## COUNT TWO

(Communication of Restricted Data)

1. Paragraphs 1 through 9 of the Introduction to this Indictment and paragraph 19 of Count One of this Indictment are incorporated by reference as though fully set forth herein.

2. On or about April 1, 2020, having been arrested in and first brought to the Northern District of West Virginia, the defendants, **JONATHAN TOEBBE** and **DIANA TOEBBE**, having possession of, access to, and having been entrusted with a document, writing, sketch, plan, note, and information involving and incorporating Restricted Data within the meaning of the Atomic Energy Act, specifically 42 U.S.C. § 2014(y), to wit: militarily sensitive design elements, operating parameters, and performance characteristics of U.S. Navy nuclear warships, did communicate, transmit, and disclose the same to another person in COUNTRY1 with the intent to injure the United States and to secure an advantage to a foreign nation.

In violation of Title 42, United States Code, Sections 2274(a) and 2014, and Title 18, United States Codes, Section 2(a).

### COUNT THREE

(Communication of Restricted Data)

1.  Paragraphs 1 through 9 of the Introduction to this Indictment and paragraphs 27 through 31 of Count One of this Indictment are incorporated by reference as though fully set forth herein.

2.  On or about June 26, 2021, in Jefferson County, West Virginia, within the Northern District of West Virginia, the defendants, **JONATHAN TOEBBE** and **DIANA TOEBBE**, having possession of, access to, and having been entrusted with a document, writing, sketch, plan, note, and information involving and incorporating Restricted Data within the meaning of the Atomic Energy Act, specifically 42 U.S.C. § 2014(y), to wit: militarily sensitive design elements, operating parameters, and performance characteristics of Virginia-class submarine nuclear reactors, did communicate, transmit, and disclose the same to another person with the intent to injure the United States and to secure an advantage to a foreign nation.

In violation of Title 42, United States Code, Sections 2274(a) and 2014, and Title 18, United States Codes, Section 2(a).

A true bill,

/s/
Foreperson

/s/
WILLIAM J. IHLENFELD, II
United States Attorney

Jarod J. Douglas
Assistant United States Attorney

Jessica Lieber Smolar
Special Assistant United States Attorney

Lara K. Omps-Botteicher
Assistant United States Attorney

Matthew J. McKenzie
Trial Attorney
National Security Division
U.S. Department of Justice

S. Derek Shugert
Trial Attorney
National Security Division
U.S. Department of Justice