# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**UNITED STATES OF AMERICA,**

       Plaintiff,

v.

**DIANA TOEBBE**,

       Defendant.

Case No.:  3:21CR49-2
(GROH)

## DETENTION ORDER

On October 20, 2021, came the United States of America by S. Derek Shugert and Jessica Lieber Smolar, Assistant United States Attorneys and came the Defendant, DIANA TOEBBE, who appeared in person and by her counsel, Edward B. MacMahon, Jr. Esq., and by her local counsel, Barry P. Beck, Esq., for a hearing on the United States Motion to Detain [ECF No. 10], in accordance with the Bail Reform Act, Title 18, United States Code, Section 3142(f). Evidence and witness testimony were presented to the Court.

### A. The Standards

Title 18, United States Code, § 3142(g) provides the specific factors that are to be considered to determine whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. Those factors are:

1.    The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal

1

      crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2. The weight of the evidence against the person;

3. The history and characteristics of the person, including but not limited to community ties, employment, criminal history, record of court appearance or whether the person was on probation or parole at the time the current offense was committed; and

4. The seriousness of the danger to any person or the community that would be posed by the person's release.

## B.  Findings of Fact and Conclusions of Law

On October 19, 2021, an indictment was filed against the Defendant charging her with one count of conspiracy to communicate restricted data, and two counts of communication of restricted data, in violation of 42 U.S.C. §§ 2274(a) and 2014 and 18 U.S.C. § 2(a). ECF No. 37.

The Court finds as follows:

1. The rebuttable presumption to detain does not apply in this case.

2. The nature and circumstances of the offense charged according to the complaint, indictment, testimony of the FBI Special Agent and the exhibits presented at the detention hearing are as follows: Defendant's husband, co-Defendant Jonathan Toebbe, held an active "Top Secret" security clearance through the United States Department of Defense and an active "Q" clearance through the United States Department of Energy, which granted him access to information involving or incorporating "Restricted Data" within the meaning

of the Atomic Energy Act of 1954, 42 U.S.C.§ 2011 et seq. ECF No. 37. From on or about April 1, 2020, through October 9, 2021, Defendants Jonathan and Diana Toebbe allegedly conspired to sell this restricted information to a foreign nation with the intent to injure the United States and secure advantage to a foreign nation. Id. After the foreign government, hereinafter COUNTRY1, received the sample of Restricted Data and instructions for establishing a covert relationship to purchase additional Restricted Data, COUNTRY1 informed the FBI and the FBI contacted the supplier to establish an undercover covert relationship. During this undercover operation, the FBI arranged four dead drops with Defendants. Defendant Diana Toebbe was present at three of the four dead drops. Video from the dead drops show that Diana Toebbe is a willing participant in the activity. See Gov't Ex. 5. Additionally, messages between the Defendants from as early as March 2019 through October 5, 2020, demonstrate that Defendants were contemplating an activity that may require them to leave the country quickly. Gov't. Ex. 26.[1] Specifically, on March 4, 2019, Jonathan Toebbe wrote: "I am also thinking about Plan A…it's not morally defensible either. We convinced ourselves it was fine, but it really isn't either, is it?" Id.  Diana Toebbe wrote in response to Jonathan on the same date. "I have no problems at all with it.  I feel no loyalty to abstractions." Id. On March 7, 2019, Jonathan Toebbe wrote, "We've got passports, and some savings. In a real pinch we can flee quickly. Id. Diana responded on the same date, "Right. Let's go sooner than later." Id. The FBI

---

[1] Government's Exhibit 26 consists of a list of messages between Diana and Jonathan Toebbe taken from the Signal app on Jonathan's cell phone.

3

has not recovered the thousands of "Top Secret" documents that Defendant offered to sell to the FBI and the money paid to Defendants prior to their arrests on October 9, 2021.

3. The weight of the evidence against Defendant Diana Toebbe is strong. In the undercover correspondence provided by the Government, Defendant Jonathan Toebbe wrote:

> "….You asked if I am working alone. There is only one other person I know is aware of our special relationship, and I trust that person absolutely…."

ECF No. 1-1 at 20, ¶ 63. Diana Toebbe's participation at three of the four dead drops is evidence of her involvement in the alleged crimes. Gov't. Ex. 5.

4. If convicted, Defendant is subject to a lengthy sentence, a maximum of life in prison.

5. Although Defendant has no prior criminal history, the nature and circumstances of the charges against her and her actions demonstrate that Defendant is a danger to every community and to our national security by clear and convincing evidence.

6. Further, Defendant is a flight risk by a preponderance of the evidence and should be detained on those grounds alone. In the undercover correspondence provided by the Government, Defendant Jonathan Toebbe wrote:

>  ….I have considered the possible need to leave on short notice. Should that ever become necessary, I will be forever grateful for your help extracting me and my family. I surmise the first step would be unannounced travel to a safe third country with plans to meet your colleagues. We have passports and cash set aside for this purpose. I pray such a drastic plan will never be needed, but you are right: it is a comfort to know you are ready and willing to aid us…..

    ECF No. 1-1 at 20, ¶ 63. Additionally, the messages provided in the Government's Exhibit 26 show Defendant Diana Toebbe's desire to leave the country as early as March of 2019. On October 5, 2020, Diana Toebbe wrote to Jonathan Toebbe, "I think we need to be actively making plans to leave the country." <u>Id.</u> The evidence seized by the FBI at Defendants' residence including a back pack, a computer, and a large sum of money concealed in a box, suggests Defendants' preparation to leave the country on short notice. Further, the Defendants were seeking renewal of their passports on an expedited basis despite not having travel plans until Spring of 2022.

7. Defense counsel presented no evidence[2] or testimony but argued that electronic monitoring, a third-party custodian, and no computer or internet access would suffice to prevent Defendant from fleeing. The Court is unconvinced.

8. No bond conditions can be set to reasonably ensure the appearance of Defendant and the safety of the community.

## C.  Decision

Based upon the evidence presented and the above findings of fact and conclusions of law, the Government's Motion to Detain [ECF No. 10] is **GRANTED.** Accordingly, it is hereby

**ORDERED** that:

1.    Defendant is hereby remanded to the custody of the United States Marshals pending further proceedings in this case;

---

[2] Defendant's Supplemental Proffer [ECF No. 56] for Detention Hearing was filed on October 21, 2021. The Court did take this supplement into consideration in its determination.

2. Defendant be confined in a facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel;

4. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding; and

5. Any party seeking revocation or amendment of this Order shall file a motion pursuant to 18 U.S.C. § 3145.

The Clerk of the Court is directed to provide a copy of this Order to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: 10-21-2021**

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE