IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

      Plaintiff,

v.                                        CASE NO. 3:21-CR-49-02

DIANA TOEBBE,

      Defendant.

**DEFENDANT DIANA TOEBBE'S APPEAL FROM MAGISTRATE JUDGE'S ORDER DENYING MOTION TO REOPEN DETENTION HEARING**

## I. Introduction.

The Defendant, Diana Toebbe, by counsel, requests that the Court review the Magistrate Judge's order denying her motion to reopen her detention hearing in this case. Ms. Toebbe's motion presented the Magistrate Judge with substantial new evidence and information bearing on the issue of whether there are conditions of release that will reasonably assure her appearance and protect the safety of any other person or the community. The Magistrate Judge, however, failed to properly consider this new information and evidence. Therefore, this Court should overrule the Magistrate Judge's order and reopen Ms. Toebbe's detention hearing.

## II. Procedural History.

On October 20, 2021, the Magistrate Judge conducted a hearing on the Government's motion to detain Mrs. Toebbe pending trial. Following the hearing, the Magistrate Judge entered an order granting the Government's motion. [Doc 57].

On December 8, 2021, Mrs. Toebbe filed a motion to reopen her detention based on new evidence and information. [Doc 75]. On December 20, 2021, the Magistrate Judge entered an order denying Mrs. Toebbe's motion. [Doc 82].

### III. Applicable Law.

Pursuant to 18 U.S.C. §3145(b), if a person is ordered detained by a magistrate or by a person other than a judge of a court having original jurisdiction over the offense and other than a federal appellate court, that person may file with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly. "When a defendant seeks review of a magistrate judge's order of detention, the district court is bound to review the matter de novo and undertake a complete review of the matter for the purpose of arriving at its own 'independent conclusion.'" *United States v. Williams*, 753 F.2d 329, 331 (4th Cir. 1985).

Title 18 U.S.C. §3142(e) of the Bail Reform Act, which governs release or detention, requires the Court to hold a hearing to make findings as to whether a defendant should be released or detained. The factors to be considered in determining whether to release a defendant are set forth in 18 U.S.C. §3142(g) and include: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

A defendant shall be detained pending trial only if the court "finds that no condition or combination of conditions will reasonably assure" either (1) "the appearance of the [defendant] as required" or (2) "the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Stewart,* 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam). If the rebuttable presumption under 18 U.S.C. § 3142(e)(2) does not apply, then, "[w]ith regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings." *Stewart,* 19 F. App'x at 48 (citing *United States v. Hazime,* 762 F.2d 34, 37 (6th Cir. 1985)).[1] "The structure of the [bail reform] statute mandates every form of release be considered before detention may be imposed." *United States v. Orta,* 760 F.2d 887, 892 (8th Cir. 1985); *see also United States v. Hansen,* 108 F. App'x 331, 332 (6th Cir. 2004).

## IV. Argument

**A. The previously undisclosed text messages between Mrs. Toebbe and her husband show that she wanted to leave the country in 2019 and 2020 because of her intense dislike of the former president, Donald Trump, not because she was involved in any alleged criminal activity with her husband, which is what the Government attempted to prove at the original detention hearing.**

In the Detention Order, the Magistrate Judge found that Mrs. Toebbe was a risk of flight. This finding was based, in large part, on several text messages between Mrs. Toebbe and her husband on March 4 and 7, 2019, and October 5,

---

[1] "The rebuttable presumption to detain does not apply in this case." (Detention Order, Doc 57, p. 2).

3

2020. (Doc 55-15). The messages were obtained by the Government from the "Signal" instant messaging application on the cell phone that was seized from Mrs. Toebbe's husband at the time of his arrest. In the selected messages introduced by the Government, Mrs. Toebbe and her husband discussed the possibility of leaving the country, having passports ready, having some savings, and being welcomed by a foreign country.[2] Based on these messages, the Government argued that Mrs. Toebbe was a flight risk if she were not detained. According to the Government, these messages indicated that Mrs. Toebbe's desire to leave the country was motivated by her husband's alleged scheme to sell classified information to a foreign country.

Subsequently, the Government disclosed additional text messages between Mrs. Toebbe and her husband which added exculpatory context to the selected messages that were presented to the Magistrate Judge. The additional messages, which were not previously made available to the defense, show that Mrs. Toebbe's desire to leave the country had nothing to do with the crimes alleged in this case. Rather, the actual reason that she wanted to leave the country was her extreme dislike of the former president, Donald Trump.

Nevertheless, after having previously relied on the incomplete and misleading messages to justify Mrs. Toebbe's detention, the Magistrate Judge

---

[2] The 2019 messages predate the timeframe of the Indictment, which alleges that the conspiracy to distribute "Restricted Data" began or about April 20, 2020. The October 5, 2020 message predates the FBI's undercover operation, which began on December 26, 2020, and Mrs. Toebbe's presence at the "dead drops" that the FBI arranged with her husband, which occurred on June 26, July 31 and October 9, 2021.

4

denied her motion to reopen the detention hearing. In so ruling, the Magistrate Judge stated that the previously undisclosed messages:

> do not have a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of Defendant as required and the safety of the community. Regardless of the reason, the text message exchange demonstrates that Defendant previously contemplated leaving the country. Whether Defendant's motivation is spurred by her dissatisfaction with elected officials, her alleged involvement in the crime charged, or any other reason, it is not material to this Court's decision on Defendant's risk of flight by a preponderance of the evidence.

[Doc 75, p. 2].

The reason that Mrs. Toebbe previously wanted to leave the country is highly relevant to whether she is a risk of flight at this time. It is one thing for a person to want to leave the country for political reasons. On the other hand, it is quite another thing for a person to make plans to leave the country for the purpose of avoiding prosecution for a crime. In the first instance, the person should not necessarily be considered a risk of flight just because she once contemplated relocating to another country for political reasons, which was her right. On the other hand, a person who had planned to leave the country to avoid prosecution for a crime should obviously be considered a risk of flight, especially if the person is in custody for the very crime for which she was planning to escape prosecution. In denying Mrs. Toebbe's motion to reopen her detention hearing, the Magistrate Judge totally ignored the important distinctions between these two scenarios in assessing whether she was a risk of flight.

The Government, on the other hand, recognized the significance of Mrs. Toebbe's reasons wanting to leave the country. At the detention hearing, the Government purposely sought to discredit Mrs. Toebbe's proffer that she wanted to leave for political reasons. Specifically, when the Government asked F.B.I. Agent Olinits about the content of the messages between Mrs. Toebbe and her husband, he denied any knowledge of them referring to her wanting to leave the country because of political reasons. At that time, however, he was fully aware that the undisclosed messages clearly indicated that she wanted to leave because of her intense dislike of the then-president.

The Government's effort to prove that Mrs. Toebbe had planned to leave the country for nefarious reasons was effective, albeit unfairly so, as the Detention Order made no reference whatsoever to her proffer. Instead, the Detention Order only cited the selected messages offered by the Government. Since the Detention Order was based, in part, on these misleading and incomplete messages, the Magistrate Judge, should have reopened the hearing to consider the risk of flight issue in the context of the newly disclosed messages showing that Mrs. Toebbe wanted to leave the country because of a president who is not in office at this time.

**B. Since the original detention hearing, Mrs. Toebbe has obtained exculpatory statements from her husband declaring that she is innocent.**

The Magistrate Judge failed to consider the exculpatory statements from her husband that Mrs. Toebbe obtained after her original detention hearing. In the motion to reopen the detention hearing, she provided a letter from her husband to

6

her father in which he stated that, "I have high hopes that Diana will ultimately be exonerated." In addition to this letter, Mrs. Toebbe proffered that her husband has also informed the Government and others that she was not involved in his alleged scheme to sell classified information. The Magistrate Judge, however, completely dismissed this exculpatory evidence, stating that: "the issue before this Court is detention, not the determination of Defendant's guilt or innocence. Thus, the Court finds that this alleged exculpatory evidence has no material bearing on the issue of risk of flight or safety to the community." [Doc 75, p. 2].

Contrary to the Magistrate Judge's conclusion, the weight of evidence against Mrs. Toebbe is highly relevant to the issue of whether she should be detained. Indeed, the "weight of evidence against a person" is one of the statutory factors that a court must consider under 18 U.S.C. § 3142(b). Moreover, the Detention Order itself referred to the weight of the evidence against Mrs. Toebbe. In that regard, the Magistrate cited to the evidence that Mrs. Toebbe was present with her husband when he made three of the "dead drops," and that he wrote an email to the undercover agents stating that: "There is only one other person I know is aware of our special relationship, and I trust that person absolutely…." While this evidence is arguably incriminating, her husband's recent statements exculpating her, plus the newly disclosed messages showing that she did not want to leave the country for illegal reasons, suggests that she was not a knowing participant in her husband's alleged crimes.

7

Furthermore, after the Magistrate Judge declined to reopen Mrs. Toebbe's detention hearing, her counsel obtained additional exculpatory statements by her husband. Specifically, in the following recorded telephone calls from the jail, her husband tells several family members that she is innocent:[3]

- 11/3/2021: tells his son that she did not commit a crime.
- 11/6/2021: tells his mother that Diana wasn't in any way able to be involved.
- 11/11/2021: tells his father that he will provide evidence that "will help clear Diana's name."
- 11/13/2021: tells his son that he will provide "evidence to exonerate your mom."
- 11/17/21: tells his son that she is in no way to blame for any of what is going on.
- 11/18/2021: tells his father that she is innocent.
- 11/11/2021: tells his son that she's innocent.

Based on this newly obtained exculpatory evidence, Mrs. Toebbe's detention hearing should be reopened in order to reevaluate whether the weight-of-evidence factor now supports her release. This is especially true given the fact that the Government, though agent Olinitis, admitted at the detention hearing that they had no direct evidence that Mrs. Toebbe was aware that her husband was engaged in an espionage plot. His numerous statements that his wife is innocent raise significant issues as to how the Government can bear its burden of proof at trial and these doubts should be resolved in favor of pretrial release.

### C. The Magistrate Judge failed to address why the $100,000.00 cash bond that Mrs. Toebbe's father offered to post would not reasonably assure her appearance.

---

[3] Defense counsel believes that the Government already has copies of these recorded telephone calls. If not, defense counsel will provide them to the Government upon request.

8

Finally, the Magistrate Judge's order denying Mrs. Toebbe's motion to reopen her detention hearing makes no reference whatsoever to her father offering to post a $100,000.00 cash bond to secure her release. This money was not available at the time of the original detention hearing and offers the Court substantial security to insure Mrs. Toebbe's appearance at all proceedings in this case. The provision of this bond imposes substantial hardship on Mrs. Toebbe's aging parents, and the Court can know that she would never abscond with such risk on her parents. In addition, Mrs. Toebbe has two sons to care for who need their mother and the prospect of her fleeing the country, as baseless as that charge may be, is greatly mitigated by her family connections and loyalty to her parents. Therefore, the Magistrate Judge should have reopened the detention hearing to consider why a $100,000.00 cash bond would not reasonably assure her appearance.

## V. CONCLUSION

Wherefore, Mrs. Toebbe respectfully requests that the Court reopen her detention hearing to consider this new information and evidence and then allow for her pre-trial release.

**DEFENDANT**
**By Counsel**

/s/ Barry P. Beck
Barry P. Beck
Power, Beck & Matzureff
308 West Burke Street
Martinsburg, WV 25401
(304) 264-8870

Edward B. MacMahon, Jr.
107 E. Washington Street
PO Box 25
Middleburg, VA 20118
(540) 687-3902

## CERTIFICATE OF SERVICE

I, Barry P. Beck, counsel for Defendant, hereby certify that on the 10th day of January, 2022, the foregoing **DEFENDANT DIANA TOEBBE'S APPEAL FROM MAGISTRATE JUDGE'S ORDER DENYING MOTION TO REOPEN DETENTION HEARING** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Barry P. Beck
Barry P. Beck