IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTISNBURG DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cr-0049-2 |
| | ) | |
| **DIANA TOEBBE,** | ) | |
|     **Defendant** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY**

Diana Toebbe provides this Memorandum in Support of her motion to disqualify the Honorable Gina Groh from this case. Recusal is necessary pursuant to 28 U.S.C. § 455(a), 28 U.S.C. § 455(b)(1), and *Liteky v. United States*, 510 U.S. 540 (1994), because Judge Groh decided multiple issues in this case based on facts outside the record.

Background

Diana Toebbe was indicted on one count of conspiracy to communicate restricted data and two substantive counts of communicating restricted data, in violation of 42 U.S.C. § 2274(a). The indictment alleged that Ms. Toebbe "provided cover and acted as a lookout" when Jonathan Toebbe, who held a high level security clearance, worked for the Navy, and stole classified documents from his employer, conducted "dead drops" of the stolen, restricted information, attempting to transfer it to a foreign country. (ECF 37 ¶¶ 17, 29, 34, 41.)

Ms. Toebbe signed a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), whereby she would plead guilty to the conspiracy charge in exchange for an agreed-upon sentence of 36 months. (ECF 98.) This Court, however, rejected the plea on the grounds that the sentence was insufficient to protect the public interest. Ms. Toebbe withdrew her plea.

1

Ms. Toebbe then entered into a new plea agreement, which bound the Court to sentence her to the low-end of the advisory Sentencing Guidelines range. The agreement included a stipulation that the base offense level was a level 37, and anticipated reductions under U.S.S.G. § 5K1.1 and U.S.S.G. § 3E1.1. (ECF 161 at 12, 14.) The Court denied the government's motion under Section 5K1.1, and denied her acceptance of responsibility under Section 3E1.1. The Court also applied a two-level enhancement for obstruction of justice.

In rejecting the arguments in favor of the government's motions under Section 5K1.1 and denying Ms. Toebbe acceptance of responsibility, the Court stated several times that it believed that Ms. Toebbe had a "plan C" to sell more confidential information and reap additional financial rewards for her crime when ultimately released from prison. (*E.g.*, ECF 169 at 67-68; ECF 168 at 20) The Court considered it as fact that Ms. Toebbe has access to more confidential information and more cryptocurrency that the government had not found. The government, however, told the Court that this was false:

> Your Honor, there is no evidence of a Plan C, full stop. This was not a fly-by-night investigation conducted by amateurs. This was the Federal Bureau of Investigation. We're talking about an entire squad from the FBI Field Office in Pittsburgh comprised of numerous agents and analysts. They received support from several field offices across the entire country, including the Baltimore Field Office, the Washington Field Office, headquarter support, support from Quantico. They also had support from the NCIS in this case. It was an extensive investigation.

(ECF 169 at 65) The government was adamant that there was no other unknown location where the defendants were storing confidential information that it had not yet found or accounted for, and "there is no evidence that there is some type of Plan C." (*Id.* at 66)

The Court also noted that "it looks like she's driving the bus," as compared to Jonathan Toebbe, the lead defendant who had the security clearance, who stole the information, who contacted the foreign government, and who arranged for the "dead drops." (ECF 169 at 26.) The

2

government, the party with the most complete information on both conspirators, tried to correct the Court's assumption of facts outside the record. The prosecutor explained, "It's universally accepted that the person with access, the person who is trusted, the person who has the specialized knowledge of the classified information" is more culpable "than someone who might have helped in some way. For example, as a lookout" as Ms. Toebbe was. (*Id.* at 62)

The Court also told the prosecutor that Ms. Toebbe's cooperation was minimal. The government again had to correct the Court. The prosecutor explained that the victim (the Navy), the FBI, and the United States Attorney's Office learned new information critical to husband-wife defendants and learned all the information they needed to ensure that no money or documents were hidden. (*E.g.* ECF 169 at 40, 65) The prosecutor explained that the Navy and FBI were uniquely positioned to assess the cooperation and determined it was extremely beneficial to the government. (ECF 169 at 65)

Both the defense and the government asked the Court to impose a variance sentence. The government asked the Court to impose a sentence of 36 months. (ECF 169 at 68) The court sentenced Ms. Toebbe to 262 months imprisonment (JA 154), although the parties had anticipated that the low end would have been 108 months.

Ms. Toebbe has filed a petition under 28 U.S.C. § 2255. She alleges that her trial counsel were ineffective and that her plea was neither knowing nor voluntary.

<u>Argument</u>

For the public to maintain faith in the judicial system, "justice must satisfy the appearance of justice." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988). Requiring judges to maintain the appearance of impartiality "is not some artificial attempt to mask imperfection in the judicial process, but rather an essential means of ensuring the reality of

3

fair adjudication. Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1909 (2016).

Canon 3(C) of the Code of Conduct for United States Judges, as well as 28 U.S.C. § 455(a), requires a judge to recuse themselves when their impartiality might reasonably be questioned. To compel recusal, all that is necessary is "a showing of an appearance of bias . . . sufficient to permit the average citizen reasonably to question a judge's impartiality." *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981). *See also In re Al Nashiri*, 921 F.3d 224, 234 (D.C. Cir. 2019).

The objective standard of Section 455(a) considers "whether an objective, disinterested observer fully informed of the relevant facts would entertain a significant doubt that the judge in question was impartial." Carles Geyh, James Alfini, and James Sample, Judicial Conduct and Ethics, 4.05 (6th Ed. 2020). *See also Liljeberg*, 486 U.S. at 860-61. This standard examines the facts as "filtered through the eyes of a reasonable observer, rather than through the subjective view of the judge in question or a party or lawyer appearing before the judge." Geyh, et al., at § 4.05. Even if the judge subjectively believes that he can be impartial, if the facts would appear otherwise to a reasonable person, the judge must recuse.

Section 455(b)(1) of Title 28, which is also reflected in Canon 3(C) of the Code of Conduct for United States Judges, provides a subset of circumstances requiring recusal. Judges "shall disqualify" themselves when they have "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). When a judge bases rulings on facts or a source other than facts developed in the course of trial, the judge exhibits bias under Section 455(b)(1). *Liteky*, 510 U.S. at 556. When a

4

judge relies on information from outside the record, or issues rulings that "demonstrate a deep-seated and unequivocal antagonism that would render fair judgment impossible," the judge must recuse. *Id.* Alleged bias and prejudice is disqualifying when rulings on the merits have "some basis other than what the judge learned from his participation in the case." *Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir. 1984).

Here, the Court based multiple rulings on facts outside the record or on assumptions directly contradicted by the record. The Court selected the particular sentence on the grounds that Ms. Toebbe was "driving the bus," had additional money stashed somewhere, and had access to more classified documents. None of these facts exist in the record. Indeed, the government, the party in a position to know, repeatedly and explicitly told the Court that these assumptions were incorrect and were not supported by the record. These rulings were thus not grounded in information that the judge learned during the course of the case. Recusal is therefor mandatory under Section 455(b)(1).

Moreover, the more expansive recusal criteria of Section 455(a) also require recusal. While typically rulings do not give rise to a need for recusal, here the tenor of the rulings and the fact that they were based on extrajudicial facts and assumptions belied by the record would give an objective observer with access to all the facts reason to question the judge's impartiality. An objective observer with full information would question whether the Court had been objective in earlier hearings, and would be objective in the future. A reasonable person would wonder why the Cout assumed facts about Ms. Toebbe that were nowhere in the record and why the Court ignored the facts contrary to what she had predetermined from a source outside the courtroom, evidence, or pleadings. Judge Groh's continued participation in this case will not satisfy the essential element of justice that it appear to be neutral and unbiased.

Sometimes, re-assignment of a case to a new judge is necessary "in unusual circumstances where both for the judge's sake and the appearance of justice an assignment to a different judge is salutary and in the public interest, especially as it minimizes even a suspicion of partiality." *United States v. Lentz*, 383 F.3d 191, 221 (4th Cir. 2004) (internal quotation omitted). Reassignment of a case, even when typically a district judge would retain a case after remand, or in this case, on a 2255 petition, is appropriate when "the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected"; when reassignment would protect the appearance of justice; and when reassignment would not cause waste or duplication of efforts. *Id. See also United States v. Gugliemi*, 929 F.2d 1001, 1007 (4th Cir. 2001); *United States v. Robin*, 552 F.2d 8, 9-10 (2d Cir. 1977).

Recusal and reassignment here is appropriate under this standard. Because the factual record is not long, reassignment would cause no particular waste, delay, or duplication of effort. And as discussed above, reassignment is necessary to protect the appearance of impartiality. In addition, given the vehement opinions that the court expressed in the hearings below and contentious nature of the hearings, putting aside previously expressed views or findings may be unusually difficult here.

Conclusion

Ms. Toebbe respectfully asks for Judge Groh to disqualify herself from further participation in this case.

Respectfully Submitted,

/s/ Meghan Skelton
Meghan Skelton
SkeltonLaw, LLC
P. O. Box 308
Cabin John, MD 20818
240-425-2280
meghan@skelton.law

/s/ Jonathan Sheldon
Jonathan P. Sheldon, VSB#66726
Sheldon & Flood, P.L.C.
10621 Jones Street, Suite 301-A
Fairfax, Virginia 22030
(703) 691-8410 (Phone)
(703) 991-7413 (Fax)
jsheldon@sfhdefense.com

*Counsel for Defendant*
*Admitted Pro Hac Vice*

*Local Responsible Counsel:*

*/s/ Robert McCoid*
Robert G. McCoid
West Virginia Bar #
McCoid Law Offices, P.L.L.C.
56-58 14th Street
Wheeling, WV 26003
304-242-2000
robert@mccoidlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January, 2025, a true copy of the foregoing Memorandum In Support was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Robert McCoid*
Robert McCoid

7